The first, excuse me, the first case of oral argument is Fuller v. Gateway Regional Medical Center and Fuller v. Dr. Petrovich. Is that pronounced Petrovich? Yes. Counsel, whenever you're ready you may proceed. Thank you, Your Honor. May the police report. I'm Roy Thrips and I represent the minor plaintiffs in this case. This is a consolidated action and the two appeals is distinct and although the Rule 308A appeal was brought later, I'm going to address that first and then segue into the Rule 304 appeal because I think that makes more logical sense. Under Rule 308A, the court's jurisdiction is very narrow. It's limited to the question certified by the trial court. The defendant's brief tries to expand that and changes theories from what we argued in the trial court and attempts to launch into an independent contractor defense. That's inappropriate for a couple of reasons. On the merits, I would remind the court that this is a pleadings case. We haven't had any discovery yet. It's simply the sufficiency of the complaint that is at issue. In the case itself, it's a direct liability rather than the carrier's liability. But I would also submit that this court would have no occasion to answer the Rule 304 appeal without the Rule 308 question. And I say that respectfully and I'm mindful that this is your decision, but I suggest that we have no occasion to answer that because the way the question is phrased presupposes the dismissal of the lawyers was proper. And on this record, that dismissal is blatantly improper. The trial court clearly misunderstood the litigation privilege and that was the basis for the dismissal. In this case, and it's in the supplemental appendix at page 812 and the trial transcript at page R00010, the judge, Judge Callis, said, and this is a quote, the lawyers are out. I just do not believe there is a cause of action that lies here against the lawyers. There are a couple of problems with that analysis. One is this court's decision in the Kim case, and I'm sure I'm butchering the pronunciation, that's at 395 Bill Act III, 1086. The Kim case held that the plain language of the Mental Health Confidentiality Act includes attorneys and relied on Section 10D of the Act, which specifically says that neither a party, quote, nor his or her attorney may do these things. And if so, then they're liable to condemnments. So the Act is specifically directed at attorneys. And this makes sense because attorneys are generally the ones who are issuing subpoenas. And a subpoena is required by the Mental Health Confidentiality Act. Now, I'm going to make an observation that is not in the briefs, and that's because this happened at the end of last year. It's not a dispositive thing by any means. But at the end of last year, Supreme Court Rule 20481 was amended to allow attorneys to issue subpoenas directly. You don't have to go to the clerk's office anymore. And that is significant in the context of this case, because if there is no restraint on attorneys from the statutory language of the Mental Health Confidentiality Act, and now the attorney doesn't even have to go to the clerk's office, we have an unrestrained situation that is precisely what the statute was designed to protect against. To hold, as the defendants suggest, would be to eviscerate the statute. Who other than attorneys can we conceive of who are going to be routinely subpoenaing psychiatric records? Well, the short answer is no one. The defendants' next argument is that the plaintiffs don't have standing to sue. And just as an aside, I would suggest that in my experience, a standing argument is only slightly less weak than a waiver argument. It's almost always wrong. There's almost always standing. But in this case, the statute itself gives them standing. It's not a question of the typical standing analysis. Section 15 of the statute confers standing on, quote, any aggrieved person. It doesn't even say the recipient of services. It's any aggrieved person may sue for damages. You can't get a more specific or broad authorization to sue than saying anyone can sue for damages if you've been aggrieved. And I would submit that the intent of the legislature was to keep this as broad as possible so that the provisions of the statute could not be evaded by clever lawyering. That brings us to the litigation privilege. And the defense argued that strongly in the trial court. And Judge Callis seemed to accept that in her rulings, that the lawyers would be immune. The problem with that is that there is no reported Illinois decision that applies the litigation privilege to anything other than actions for defamation. There's a good reason for that. If we go to the restatement, the restatement specifically says that you're immune from publishing defamatory material as part of a court proceeding. And there are cases of the late Judge Charles Chapman's famous opinion about calling an expert witness a hired gun or a prostitute, things like that that would be actionable otherwise, are perfectly proper in the context of a trial or litigation. But this is not a defamation case. This is an invasion of privacy case in a situation where the plaintiff's rights are created by a statute. These are not common law rights. It's a statutory right that protects them. Now, I'd like to mention the Golden case, which is, and I'm going to give you a jump site to the specific area of the case that I'm relying on, but it's 295 Illatt 3rd at page 872. And the Golden court said that we're very reluctant to expand the scope of the litigation privilege. And this was a situation where the defense was also arguing for an expansion of it. Now, the defense in this case cites the Scheib case from the Seventh Circuit, where the Seventh Circuit said the litigation privilege applies not just to defamation, but also to eavesdropping. And I would submit to this court that this may be the rare occasion when you can explain to the Seventh Circuit why they're wrong about Illinois law. And the reason they're wrong about Illinois law is the Scheib court never got to the next step of the analysis, which the Manzanilla court did get to. And I'll give you the Manziera site, which is 299 Illatt 3rd at 598. In Manziera, they said you can't have a common law privilege trump a statutory right. If the legislature has created a statutory right, then you can't say that a common law privilege defeats that. Because presumably the legislature was mindful of the common law privilege at the time they enacted the statute. Manziera, not coincidentally, involved the same issues as in this case. It was a mental health confidentiality act that rejected the application of the litigation privilege. Scheib failed to go to the next step, which was eavesdropping is prohibited by statute. It's a criminal statute in Illinois. They just said, oh, there's a common law privilege, therefore plaintiff loses. They never went to the next stage in the analysis, and that was their error. So, recognizing that Illinois law is dead set against them with a line of appellate court cases, including this court's decision in the Kim case, the defense cites a bunch of cases from other jurisdictions. And there are unpublished district court cases. There are cases that clearly are within the privilege because they involve defamation. But for the most part, I'm going to submit that those are adequately dealt with in my reply brief. What I would like to just mention as an aside is the Hageman case from the Ohio Supreme Court, which is at 893 NE 7153. Hageman was decided under HIPAA, and there is also a HIPAA claim in this case. But Hageman rejected the argument that transferring psychiatric records at the courthouse from one case to another was privilege. They said, no, you can't do that. It's a violation of the federal statute, and the defamation privilege does not insulate it. Now, I would submit that that's persuasive authority. I think the Illinois authority is controlling and is 100% on plaintiff's side in this case. So, we're left with the question, why should we expand the scope of the privilege in this case? And in the brief, I cite Prosser, who suggests that privileges are based on the concept of protecting conduct that is of social importance. And in this case, throughout their briefs on both of the different appeals before this court, the defendants have failed to explain why society should protect conduct that exploits sexual abuse of minors as leverage against their mother in an effort to intimidate a whistleblowing witness. And I submit to you that putting the question is to answer it, and that there can never be justification for that, and that no court should try to expand a privilege in order to insulate that kind of conduct. So, I submit to you that in this case, the Rule 304A appeal should be reversed and remanded to the circuit court of Madison County. And the Rule 308 question should either be deferred or should simply be answered no. And unless there are questions, I would thank you. Thank you, Counsel. Counsel? Your Honors, may I please report? My name is Gary Meadows, and I represent all of the four defendants to these appeals just for the sake of housekeeping. You will note that the stylist still includes Dr. Petrovich, but to my knowledge, she's never actually been in this case or actually been served. So I think he was named, so he's actually not a party, at least at this moment in time. In any event, for purposes of these discussions this morning, I'm going to refer to the attorney defendants and the client defendants. The attorney defendants are Richard Bair and his firm. The client defendants are Gateway Hospital in Granite City and Community Health Services, which is a distant holding company that for reasons that have never been clear to me were originally part of the underlying litigation. In any case, the attorney defendants are part of the first appeal. The client defendants are the second and 308th appeal. But before I get into that, and Mr. Griggs did not get into the facts too much, and I wanted to because it's important to understand why the court applied the litigation privilege as it did. And I'll try to keep it brief, but there's a lot of them. But I'll say this in advance. The reason that the facts are important is that in applying the litigation privilege that's recognized in Illinois and has been recognized in courts, one case that's since medieval England, I mean essentially it's been around a long time, is the issue of whether somebody's statements or conduct is privileged is whether that statement or conduct is pertinent to the case. I mean you can't use a trial as an excuse to bring in somebody as a witness to talk about things that have nothing to do with what's going on before the court. And in this case, Ms. Fuller, there was a dispute in the underlying case. Jan Fuller was a nurse. Jan Fuller was the original Fuller case. She was a nurse that worked for Dr. Petrovich. When Dr. Petrovich came or was asked to go work at Gateway and be on their staff, he wanted her to come with him. So Gateway walked up to the hospital and wanted her to come as well. There was some apparent reluctance by her to do so. And so they said, well, come on in, talk about it, tell us what it is you are, what the issues are. So she ended up meeting with, I believe, their CEO, Mark Benz, and that's where the stories began to differ. Later on, after she sued the hospital in the underlying case, she testified that she had told Mark Benz at that meeting that she was reluctant to come in because Dr. Petrovich had a substance abuse problem. Mark Benz testified contrary to that. He said, no, that's not what we talked about. She came in and was very emotional and talked about how she was conflicted about coming to work because her sister-in-law, I'm sorry, her sister had previously worked for Dr. Petrovich and had been blamed for some financial problems, and therefore her sister was angry at the doctor and was pressuring Janet Fuller not to continue to work for Petrovich. But, and this is the important part, at the same time, she said, but I need the insurance because of my family's medical and psychological issues. Mark Benz testified to these facts, I believe in August of 2005, at a time when the psychological records that are at issue were not even discovered yet. They were off in some doctor's office. Approximately two months later, after those records were discovered, they essentially bolstered Mr. Benz's testimony because the same things that he reported that she was complaining about, she also was complaining about at her counseling sessions. And so that's the pertinency. In the Janet Fuller case, they were clearly pertinent because she was claiming psychological damages. So it was, if not only pertinent, it was clearly relevant. In the subsequent malpractice case that sort of, there was a number of malpractice cases that came to life after it became public knowledge about Dr. Petrovich. One of them was the Sykes case that's referenced in the brief, but in that case then Janet Fuller was going to be a witness for the plaintiff to talk about having told the hospital in January of 2004 about the doctor, whereas the hospital was saying no, that didn't occur. And so the records themselves bolstered the testimony simply because they did not, or they showed that what Mark Benz testified to, when he had never seen the records, and the records weren't even out there, all the same information was found in there. That's the pertinency, and that's why I had to talk about the facts a little bit. Now, so when this case is over. Why would you leave the names of the minors in the records? To my understanding, the names of the minors were not in the records. Now that's not in the records because we didn't obviously file the records. I haven't even seen, to be honest, I haven't even seen the records myself. So, but it's my understanding that the daughters were referenced as daughters. And so the names of the daughters were never disclosed to anybody, ever, anywhere. But they were identified as her daughters. I believe so. Again, I'm not seeing the records themselves, but that's the essence of what I understand. Why would that information be relevant to the case? Wouldn't just the simple fact she got mental health treatment be sufficient? No. No, because she told Mark Benz about her issues, her diabetes, her hysterectomy, her daughter's issues, she mentioned their father's abuse. All of that was things that Mark Benz testified to, which were later confirmed when the records came out that showed that that was actually apparently truthful, which he would not have known about if he, if she hadn't told him. So basically, those records in essence bolstered what it is he had already testified to. And so in the Fuller case, they were clearly relevant because it went to her damages. In the subsequent malaclase, they were logically relevant. Ultimately, the court in that case found that they were not legally relevant, presumably because they were prejudicial or whatever, and they were not used in that case. So based on those facts, we approached the trial court and said, the litigation privilege has been around forever, protects what lawyers do in the course of defending their clients, and particularly to avoid the second lawsuits and third lawsuits for every unhappy adversary that doesn't like what you as a lawyer do in the case against them. And the only real requirement is the pertinency. And the case law in Illinois makes it clear that that's to be very liberally construed. As long as it's remotely pertinent, it's perfectly fine. And if that's true, the case law even says, even when the lawyer has bad motives, even if you have bad intentions, it's still privileged. I mean, the lawyer may be doing things that many lawyers wouldn't just to provoke the other side, but as long as it's pertinent, it's protected. So based upon that, we believe the trial court properly applied the litigation privilege to the claims that are being made, which are, as I understand it, from the complaint, the negligence claims and publication of private facts. Now, I'll try to address some of the arguments. Do you have a Petrillo problem in the way this was handled? No, I don't believe so, Your Honor. What happened? I left out these facts just to... No, I realize that, and we've read the briefs, so we've got the factual statements of both of those. Okay. What happened is that in the original fuller case, it was approaching intermediation, and it was about three weeks down the road, and the psychological records were still not in anybody's possession. And so the two lawyers, the lawyer for Gateway, Richard Baer, spoke with the lawyer for Jan Fuller, Lee Barron, and they agreed that he could simply send a subpoena with a records deposition to get the records. They agreed that Richard Baer could do it via subpoena and a records deposition. And frankly, I think the doctor then sent the records without actually doing a deposition. And so there was nothing that was not known to Jan Fuller and her lawyer about what was happening. And basically, when my client received the records, he then immediately sent them to plaintiff's counsel, Lee Barron, and the case continued without a hiccup. But in terms of the issues that Mr. Dripps has raised, I'll just try to address them briefly because there's quite a few of them. One of the issues that he argues is that the litigation privilege shall only apply in connection with statements that go to the client. That Illinois law, and I agree with you, there's not a lot of Illinois law generally on these issues. You have to dig around, and it goes back many years. But that's simply not true. It extends to communications and what you do with respect to witnesses, the court, anybody who's got a pertinent connection to the case. In the couple of cases I'm thinking of, one lawyer's conduct was privileged in the Abelman case when he was sending things to the bankruptcy trustee, who was not his client. That was the privilege. Another issue that was privileged was when one plaintiff's lawyer was sending letters to another plaintiff's lawyer in another case. And they were sharing their thoughts and talking about things related to their respective litigation. That letter was deemed privileged even though it said bad things about a particular defendant. So it's not limited to a client. The Golden case that Mr. Dripps has referred to is it didn't hold that the protection only extends to clients, what you do with respect to clients. It held that after a case is over, if you send something to a non-client, then that wouldn't be privileged. That wouldn't be protected. And then in that particular case, the lawyer sent a letter to his client and then for whatever reason addressed it to his wife as well. So it was privileged to the extent it went to his client. It wasn't privileged to the extent it went to his wife because there was no reason to send it to his wife. So I submit that it absolutely applies to whatever you do with respect to witnesses, surveillance, I mean various things you do in the course of litigating a case and investigating a case. Another argument that has been made is that the privilege only applies to defamation actions. And again, admittedly, there's not a lot of case law because it doesn't crop up that much. But that too I believe is incorrect. As Mr. Dripps pointed out, the Seventh Circuit has applied it to a direct statutory cause of action under the Odoi-Eastroffing statute where lawyers attempted to use illegally recorded tapes. But the privilege protected that conduct because it was pertinent and related to the litigation. And frankly, the Court noted that the deterrence, I mean that to the extent deterrence was an issue, it was enough that the trial court could suppress the use of that evidence. As in fact, I think, as in fact the judge in the Seitz case did when he said the psychological records would not be used with respect to Jan Fulk. So it's the same sort of issue. And there's one other Northern District case where they applied the privilege to a civil rights claim for retaliation. Somebody was unhappy with their former employer because her employer had said something to her new employer and that the employer had done it at the request of the lawyer because there was a pending ADA claim. And the Court said, well, they did it because her lawyer told them to. It's related to the ADA claim. It doesn't matter whether you said something negative to the new employer. So, and then I broaden my search because frankly there's not a lot of it in my case law. And when you do, there's hundreds if not thousands of cases across the nation. And frankly, the point of all those cases, or not all of them, the point of many of those cases is that you can't limit it to defamation actions only because to do so simply invites a relabeling of the claim to be something else. Emotional distress, tortuous interference, whatever theory you can attach to it doesn't make it allowed to proceed when the conduct that is at issue is necessarily privileged. And we've cited those in our briefs, or a number of those cases. It's been applied to negligence actions, fraud, emotional distress, 1983 actions, a whole litany of actions. So it's not the nature of the claim that's being brought. It's the conduct that is at issue that you look to as to whether the claim is privileged. As I pointed out, Mr. Dripps sort of has argued that, at least at the time, the conduct that my clients engaged in was not pertinent or relevant. As I think I've explained, we think it clearly was pertinent, and at least it was clearly relevant in one case, was logically relevant in the other, wasn't ultimately used. And the trial court heard testimonies. The client court heard arguments on that, and I think perceived how pertinent it was, even if ultimately it wasn't used as an argument. Now, another large issue that's presented is, and so the bottom line is we believe the trial court properly dismissed the claims under that privilege. But another point that's been made is that under the Confidentiality Act, somehow that falls outside of the litigation privilege. As a side note, there is no Confidentiality Act claim within the count. They have a negligence claim and a publication of private facts claim. Now, admittedly, there is an allegation where they refer to the Confidentiality Act as a standard, but for whatever reason, they never actually brought a direct claim. But even if that's enough, and at least we don't believe it's actually there, and in fact, when I first received this case, I wasn't sure what they were trying to proceed on, what theories they were trying to proceed on. But assuming that that's their way of making the Confidentiality Act claim, it's our position, and we submit that the daughters, the non-patients, have no standing under the Act to bring such a claim. The Johnson case referred to in my brief specifically says that because the statute has both civil and criminal remedies, it is to be strictly construed in favor of the accused. So, the question is, what does that mean? So, who has the rights under the Act? Then if you look at the other case law, and I've cited those cases, and I won't get into too much right now. Does the statute contain the language, any agreed? It does. Who do you think? We believe that applies to the people who have the right to assert their privilege. Don't they identify those people previously in there? I mean, that's at the end of the statute. Correct. They identify, for example, the patient, the guardian of the patient, the therapist, a parent of a minor child. There's a whole lineage of people who have the right to assert their privilege. But the case law makes it clear that just because you may have an interest in the records because you're mentioned, or because maybe you're a mental health activist, I don't know. If you have some sort of interest in those records or are interested in the issue, the cases I've cited makes it clear that the privilege belongs to the patient or to the recipient, the person receiving the treatment. The cases I've referred to say the wife doesn't have the right to speak to the husband's records. The children don't have a right to speak to the husband's records. An employer, if somebody doesn't have a right to speak to the issue or speak to the records. And relatives, more specifically, there's a case, the Brown case, where the relatives were trying to stop the records from being produced. And the court said, no, that's not your issue. If she has put the records out there and you really don't have much to say about that, we recognize you have an interest because you're talked about in there. But the privilege belongs to the patient. And so, admittedly, the position, section 15 talks about any person agreed can bring a cause of action under the act. But what you're saying is they can't stop the patient from releasing the records if that's what the patient wants to do. Nor can they require the patient. I mean, nor can they require the patient. But the issue is if the patient didn't authorize it and the patient doesn't want to complain about it, does that daughter or wife have a right to object to them being disclosed? The patient doesn't authorize it to be disclosed, but they're disclosed. Now, does the wife or somebody mentioned in there have a right to object to that? I don't believe so, Your Honor. Because the whole point is we're not talking about Jan Fuller. Jan Fuller was a patient. If Jan Fuller had brought a claim, at least to this date, she has not. If Jan Fuller brought a claim, she might have a claim. I mean, she sort of invited him to go get the records. And so we could talk about that if and when the time arose. But the unagreed person doesn't add any new people to the definition of this surplus language. And I will tell you, I spent probably, I remember one Sunday spending about eight hours reading every Mental Health Act case there was. There was not a single case in Illinois where a relative or anything like that ever brought a claim under this act or claimed to have a right under the act. So it's just not out there. This to me is a very unusual situation, particularly because Jan Fuller didn't bring a claim. So the bottom line is we don't believe that it applies to relatives. We don't believe it applies to mental health advocates. I mean, and frankly, if you look at the language, it basically unilaterally allows anybody who purports to have a right to say, or not a right, who purports to have an interest in saying, well, that really upset me. You get that. I think I'm going to sue you now. And then the question is what it damages. And that's why it can't be read that broadly, especially in light of the rule that has to be applied strictly. And manageably. I mean, to apply it as broadly as that makes the Mental Health Act frankly scary to lawyers. And had I been doing this, I don't think it would have fallen through the grips, but for a long time, and having spent a lot of time studying the act, I can't conceive of how many times we or my firm have violated the act without even knowing we did so. Because there's so many different things that you're required to do, and whether it's plaintiff's lawyers or defense lawyers, I suspect that neither side is as good as we should be about applying with every particular provision of the act. That's all. Our bottom line is we do not believe that that applies, or we do not believe the litigation privilege applies to that because they don't have standing under the act. Therefore, the trial court we think was correct. And I'll address the 308 appeal issues briefly on my rebuttal. Thank you. The bottom line is that it should be scary to lawyers. Lawyers should read the statute and comply with it. And Mr. Meadows has not disputed that they violated the statute. Lawyers as officers of the court have a heightened responsibility, not a decreased responsibility, to use the power that the Supreme Court has conferred on us for our licenses. To suggest that we operate under a lower standard of scrutiny, I think, abrogates that trust. In this case, the I think Justice Donovan's question concerning the disclosure was perfect. First of all, they are identified pretty specifically as Mrs. Fuller's two daughters. Those are the ones who were disclosed. There's no confusion about that. In order to confirm or repudiate Benz's testimony, all you need is the date of the records. If you didn't have them at the time that the conversation took place  you just need to know he didn't have them yet, so he couldn't have gotten it from a source other than Mrs. Fuller. So their argument doesn't make any sense. The other part is it's not burdensome just to take a marker and blot stuff out. I get stuff every day in discovery from defense firms where they blot out social security numbers, birth dates, residence addresses of their employees. Sometimes I have to go to court and get an order saying you've got to tell me where he lives so I can subpoena him. But it's routine for attorneys to blot out that information. They didn't do it here. The trial court found that the records weren't even relevant in the site's litigation. And Mr. Meadows does a good job of trying to avoid that problem, but if they weren't relevant to that litigation, that ends the application of the privilege. And to the extent that that information was relevant, there was no relevance, no pertinence for her daughter's information. The other interesting thing that Mr. Meadows pointed out was that I had discussed the Goldman case in the context of the common law privilege giving way to the statutory right, and Mr. Meadows pointed out that in the Goldman case they said the privilege is extinguished once the litigation is over unless it's just to a client. The Fuller litigation was over. And you need to remember that what Mr. Bair did was went into file A, which was closed, removed the records, which had not been obtained through a court order and in-camera inspection, which I assume that a circuit court judge would have said, I'm giving you this information because you're not entitled to it. That's the purpose of that statutory requirement. And then he took them in and used them in the Sykes case. There's no effort made to even notify anybody. They ship them off to an expert. It then goes to plaintiff's counsel, who realizes that there's a problem with the disclosure and alerts Mrs. Fuller's attorney. There is blatant violation of the statute on almost every front. Now, Mr. Meadows said something else that was important, which is that this doesn't come up that much. Well, it doesn't come up that much because most lawyers, thankfully, don't do anything this outrageous. And this is outrageous. Now, to the extent that there's a problem with the way we identified either HIPAA or Mental Health Confidentiality Act, please remember that the trial court dismissed this at the time on the pleadings based on the privilege. I didn't even have the opportunity to amend, to clarify the allegations. And to the extent that that needs to be clarified or put in a little bit better of a phrase, I would have asked leave to be able to do that. But that's something that the trial court, if that had been the issue, should have permitted me to do it, given me an opportunity to do it. For those reasons, I would respectfully request that this court reverse the judgment with regard to the 304A appeal and affirm or defer with regard to the 308 question. Under Barbara Sayles, we have to answer that question, don't we? You can answer it no, or you can answer it because the factual predicate assumed in the question is no longer viable. I think that's the... Those are the alternatives, is what your argument is? Yes, sir. Thank you, counsel. Excuse me. I just had a few comments in response to Mr. Dritz. He argues that the records, that it's only the date of the records that are somehow pertinent. The date of receipt of the records mean nothing unless you actually know the contents of the records, because it's the contents that tend to bolster that what Mr. Benz testified to was accurate. Things he knew, or things he apparently knew that he would have no other way of knowing except for the fact that she told him. So clearly the contents of the records were pertinent. And which is the other issue? People, throughout this litigation so far, pertinency and relevancy have sort of been intermingled. Relevancy is a higher standard. Litigation privilege simply requires pertinency, not relevancy. So whether or not evidence ultimately was used or ultimately was suppressed, the only issue is pertinency. And the bottom line is that these psychological records were clearly pertinent and were relevant in both cases, whether or not ultimately they were used. And another point that Mr. Griggs made that I do want to direct to is stating somehow that the litigation privilege ended once the case was over. That doesn't make any sense insofar as the litigation privilege necessarily has to protect you from a future lawsuit. And secondly, the It would protect you for acts taken in litigation. And there's a time frame there, isn't there? Well, there's a time after the case is over. That's true. And I guess my point is that in the Fuller case, it was pertinent and relevant. In the Sykes case, it was at minimum pertinent. The litigation conduct is with respect to both cases. It's not just one. Each case, the conduct would be subject to the litigation privilege. It's not as if it ends and then you no longer get to go back and talk about that. So the bottom line is that we think the trial court was correct in dismissing the claims, given the way they're fled and given the nature of the facts in this case. And I'll try to move on briefly to the 308 issue. The 308 issue that this Court graciously agreed to accept basically said that, given that the trial court dismissed the attorney defendants, was it error for the trial court's and I'm not sure exactly the phrasing, was it error for the trial court to deny the client's motion to dismiss? And we submit that it was. In reviewing the complaint, it sounds and I've been treating it as if it's a vicarious liability claim. Mr. Dripps on appeal has argued that it's really a mixed bag of vicarious liability and direct. But the purpose is a vicarious liability. The law now makes reasonably clear that where an agent or a principal is involuntarily dismissed from a case, the corresponding principal or agent also goes because they have a unified relationship. Now, one case that Mr. Dripps cites is the Lowe case where I think the agent, the employee received summary judgment on the basis of the statute of limitations. The employer, for whatever reason, wasn't allowed to use that defense to get itself out of the case. And the court in that case said basically, well, the trial court did not really look at the merits and the policies applicable to the client's statute don't apply equally to both because the employer was kindly served. I submit in this case, the trial court did in fact address the merits because she hadn't necessarily considered the facts of the case, the pertinency. She had to consider all that to determine whether the privilege applied. So it was on the merits in this case. And in terms of equally applicable policies, the restatement, I think it's section 586 and 587, applies the same privilege to both clients and employers. So the same privilege applies to both. And we didn't necessarily raise that expressly at the trial court simply because we were proceeding as if it was a vicarious liability claim to the extent that the court reads that as somehow being a liability. The trial court should have also dismissed this simply because whether it's direct or vicarious, the same privilege gives them that protection directly. And if it doesn't apply directly, it applies vicariously because they are one and the same as their agent. One issue I did want to address, just because it certainly wasn't my intent, Mr. Griffiths indicated he thinks I'm trying to expand the scope of the issue by arguing about lawyers as independent contractors. I did include a reference to the Horowitz case which says that a lawyer may or may not be vicariously liable depending upon the nature of the work that they're being sued for because clients hire us to do that which they don't know how to do. So we choose the mechanics of how we do things and so it doesn't necessarily always lead to vicarious liability. I'm not asking the court to address that issue at all. I'm simply asking the court to take note of the fact that we're preserving that issue. If for some reason we ever have to litigate this issue that's an issue that we're not conceding that vicarious liability would exist. So thank you judges. Thank you counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement.